IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHS INC. d/b/a COMMONWEALTH LINEN SERVICES | ) ) ) | |
| Plaintiff; | ) ) | |
| v. | ) ) | Civil Action No. 7:19-cv-788 |
| ABM HEALTHCARE SUPPORT SERVICES, INC., | ) ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendant/Third Party Plaintiff | ) ) | |
| v. | ) ) | |
| RECTORS AND VISITORS OF THE UNIVERSITY OF VIRGINIA | ) ) ) | |
| Third Party Defendants | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on the Rectors and Visitors of the University of Virginia's (UVA) amended motion to dismiss with prejudice the amended third-party complaint filed by ABM Healthcare Support Services, Inc. (ABM).  (Dkt. No. 18.)  For the reasons stated below, the court will dismiss the amended third-party complaint without prejudice; thus, the motion will be granted in part and denied in part.

I.  BACKGROUND

In December 2017, ABM and UVA executed the University of Virginia Medical Center – ABM Healthcare Support Services Master Agreement (Master Agreement) under which ABM was to provide linen and laundry services to UVA.  On the same date, ABM entered a Linen Service Agreement with CHS Inc., d/b/a Commonwealth Linen Services (CLS), which granted CLS "the exclusive right and privilege to provide laundry and linen services" to ABM for

1

ABM's duties under the Master Agreement. On August 28, 2018, UVA sent ABM a letter summarizing alleged deficiencies in ABM's performance of the Master Agreement and informing ABM that UVA was terminating the Master Agreement. (Am. 3d Party Compl. ¶¶ 8–12, Dkt. No. 19.)

Because UVA terminated the Master Agreement, ABM had to terminate the Linen Service Agreement with CLS. Shortly after receiving UVA's letter, ABM sent a letter to CLS regarding the deficiencies identified in UVA's letter. ABM also provided a notice of default to CLS. It is ABM's position that CLS caused the deficiencies outlined by UVA. (*Id.* ¶¶ 14–15.)

On November 22, 2019, CLS filed its complaint asserting a claim for breach of the Linen Service Agreement. (Compl., Dkt. No. 1.) CLS alleges that it substantially performed its obligations to ABM and that the problems identified in UVA's grievance letter were a result of ABM's deficient performance and not caused by CLS. (*Id.* ¶ 13.) CLS requests $465,500 pursuant to the liquidated damages schedule in the Linen Service Agreement, $318,479 based on ABM's obligation to purchase specialty linen from CLS, and $14,705.31 for expedited linen removal from UVA. (Am. 3d Party Compl. ¶ 30.)

In turn, ABM filed its third-party complaint asserting a claim for breach of contract against UVA.[1] Specifically, ABM alleges that UVA terminated the Master Agreement without cause. The Master Agreement provides:

> If [ABM] fails to provide quality services in a professional manner, solely as reasonably determined by [UVA], and, upon receipt of notice from [UVA], does not correct the deficiency, to [UVA's] satisfaction within a reasonable period of time, not to exceed 30 calendar days unless otherwise agreed to by both parties, [UVA] reserves the right to terminate this Agreement by giving written notice to [ABM].

---

[1] UVA filed a motion to dismiss ABM's original third-party complaint. ABM filed an amended third-party complaint, and UVA filed an amended motion to dismiss. At the hearing on UVA's amended motion, the parties agreed that the amended third-party complaint and motion to dismiss rendered UVA's original motion to dismiss moot.

(Master Agreement ¶ 25, Dkt. No. 16-1.)

ABM claims that UVA failed to give it "the requisite 30-day period" to remedy the deficiencies outlined in UVA's letter and that "UVA wrongfully, arbitrarily, and without justification" breached the Master Agreement.   (Am. 3d Party Compl. ¶¶ 23–24.)   ABM seeks a total of $805,554.31 based on the early termination provision of the Master Agreement and other damages set forth in the agreement.   Specifically, ABM seeks:

- $472,370 in liquidated damages pursuant to § 12 of Attachment A of the Master Agreement.[2]

- $318,479 based on § 2 of Attachment A to the Master Agreement, which provides that "[UVA] agrees to purchase any non-standard linen items purchased by [ABM] or its contracted laundry provider for the sole use of [UVA] at the end of this Agreement based on a schedule of 50% of invoice price for usable linen in circulation and 100% of invoice price for all new unpackaged linen items in back-up inventory."

- $14,705.31 for the cost of expedited linen removal.

(*Id.* ¶ 32.)   The relief ABM seeks largely mirrors CLS's alleged damages.

UVA moves to dismiss ABM's amended third-party complaint on three grounds: (1) ABM fails to state a claim; (2) ABM failed to satisfy a condition precedent by failing to follow the parties' dispute resolution process; and (3) ABM has not asserted a proper impleader claim under Federal Rule of Civil Procedure 14.   Because the court finds that ABM has not asserted a proper impleader claim under Rule 14, it need not reach UVA's remaining arguments.

---

[2] The liquidated damages provision of the Master Agreement states that UVA and ABM agree that if "the Master Agreement . . . is terminated for any reason other than uncured material breach by [ABM], prior to the end of five (5) years, . . . [UVA] shall also be obligated to pay an Early Termination Fee ("ETF") based on the below schedule."   (Dkt. No. 6-1 at 17; Attachment A, Para. 12.)

3

## II.  DISCUSSION

Federal Rule of Civil Procedure 14 allows a defending party to implead a third party "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a).  "It is manifest from the language of the rule that the third-party claim must be dependent on or related to the initial plaintiff's claim against the defendant . . . ."  *Scott v. PPG Indus., Inc.*, 920 F.2d 927, at *3 (4th Cir. 1990) (unpublished table decision).  "Under Rule 14(a), a third-party defendant may not be impleaded merely because he may be liable to the *plaintiff*."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 368 n.3 (1978).  Rather, "[d]erivative liability is central to the operation of Rule 14."  *Watergate Landmark Condo. Unit Owners' Assoc. v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987); *see also Scott*, at *3 (quoting *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983), *cert denied*, 464 U.S. 1071 (1984)) ("[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative.  It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.").  "The court is afforded broad discretion to dismiss a third-party complaint filed under Rule 14(a)."  *United States v. Savoy Senior Hous. Corp.*, No. 6:06cv031, 2008 WL 631161, at *1 (W.D. Va. Mar. 6, 2008).

In *Watergate*, the plaintiff condominium association hired the defendant engineering and real estate management firms to design repairs to the balconies on the association's building. The defendants then subcontracted with a company who performed the repairs and another party who inspected the repairs.  After the balconies deteriorated, the association asserted a claim of negligence and breach of certain warranties against the engineering and real estate management firms.  The defendants then impleaded the subcontractor and inspector.  *Watergate*, 117 F.R.D. at 577.

The court recognized that "[t]ypically, proper third party claims involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable. Absent such derivative liability, a third party claim must fail." *Id.* at 578. It further acknowledged that it is not proper for a third-party plaintiff to assert a claim for which the third-party defendant is liable only to the original plaintiff. *Id.* (citing *Owens Equip. & Erection Co.*, 437 U.S. at 368 n.3); *see id.* ("[Rule 14] cannot be used as a device to bring into a controversy matters which merely happen to have some relationship to the original action."). The court stated:

> In other words, a third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff."

*Id.*

UVA asserts that this is a "him, not me" situation, and the court agrees. For example, ABM latches onto CLS's allegation that "one of the incidents arose from an allegation of inadequate supply of linen that had been caused by UVA's provision of an incomplete list of linen requirements and ABM's failure to use a linen tracking software system to ensure that an adequate supply of linens was ordered from CLS." (Compl. ¶ 13.) In doing so, ABM suggests that because UVA also caused some deficiencies in performance, UVA should be liable for a portion of ABM's breach. This is exactly the type of "him, not me" liability *Watergate* addressed.

Likewise, ABM argues that "UVA owes a duty to CLS to, at a minimum, purchase the specialty linens." (ABM Br. 12, Dkt. No. 22.) By asserting that UVA owes a duty to CLS,

5

ABM does not seek to hold UVA derivatively liable, but instead suggests that UVA is directly liable to CLS. These claims are not proper under Rule 14.

ABM further argues that the Master Agreement and Linen Service Agreement are intertwined and contain mirroring provisions, which create common duties between the three parties. Specifically, it points to the linen-purchase provisions in both contracts. As stated above, the provision in the Master Agreement requires UVA to purchase from ABM or its subcontractor any nonstandard linen purchased solely for UVA's use. By comparison, the provision in the Linen Service Agreement requires ABM to purchase the same linen from CLS. To the extent ABM relies on these similar provisions, its claims resemble those in *E.I. DuPont de Nemours & Co. v. Kolon Indust., Inc.*, 688 F. Supp. 2d 443 (E.D. Va. 2009).

*E.I. DuPont* centered around an ex-DuPont employee, Michael Mitchell who had access to confidential and trade-secret information regarding the manufacture, marketing, and sale of DuPont's aramid-fiber material. Mitchell created his own company, which later contracted to help Kolon develop and market its own aramid-fiber product. In his contract with Kolon, Mitchell agreed not to use other companies' trade secrets. DuPont eventually sued Kolon for willful misappropriation of trade secrets, and Kolon filed a third-party complaint against Mitchell for breach of their agreement. *Id.* at 447–48. The court dismissed the third-party complaint, noting that "Kolon has plead an entirely different factual predicate from that which was asserted in the original complaint." *Id.* at 463. It found that "DuPont's detailed allegations respecting Kolon's superseding and willful acts of misappropriation are distinct from the breach of contract claim asserted by Kolon against the third-party Defendants. Consequently, Kolon's alleged misappropriate presents an *independent claim* that is not appropriately litigated under the procedural vehicle of impleader." *Id.* at 463 ("In this case, however, '[t]he breach of contract claim asserted by the third-party plaintiffs [] fails to constitute a derivative cause of action

6

because separate and independent contracts serve as the basis for the claims.'" (alterations in original) (quoting *Blais Contr. Co. v. Hanover Square Assocs.–I*, 733 F. Supp. 149, 157 (N.D.N.Y. 1990))).

Simply put, the mirroring provisions and similar purpose of the Linen Service Agreement and Master Agreement do not change the fact that these are two different and independent contracts. Even assuming UVA was aware of the Linen Service Agreement, ABM has not alleged that UVA ever agreed to indemnify it against CLS's claims, and the Master Agreement does not incorporate or reference the Linen Service Agreement. ABM cannot expand UVA's liability simply by entering a separate contract with a third party. ABM had the opportunity to negotiate a provision in the Master Agreement that could have created contingent liability and failed to do so. Under the terms of the Master Agreement, if ABM believed or believes UVA breached the agreement, ABM may take the appropriate steps to address that breach without awaiting resolution of any claims CLS may assert under the Linen Service Agreement.

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that UVA's amended motion to dismiss (Dkt. No. 18) is GRANTED IN PART AND DENIED IN PART, and ABM's amended third party complaint (Dkt. No. 16) is DISMISSED. The motion is denied in part only because the court does not reach the merits of ABM's claims, so the dismissal is without prejudice.

Entered: July 9, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge