IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHS INC., d/b/a** ) <br> **Commonwealth Linen Services,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **ABM HEALTHCARE SUPPORT** ) <br> **SERVICES, INC.,** ) <br> ) <br> **Defendant.** ) <br> ) | **Civil Action No.: 7:19-cv-788** <br><br><br><br><br> **By: Hon. Robert S. Ballou** <br> **United States Magistrate Judge** |

## ORDER

This contract dispute is before me upon simultaneous briefs filed by the parties that I construe as a motion by Plaintiff CHS, Inc. (hereinafter "CLS") to compel documents (Dkt. 36), and a motion by Defendant ABM Healthcare Support Services (hereinafter "ABM") for a protective order (Dkt. 35).

ABM entered into a contract (the "Master Agreement") with the Rector and Visitors of the University of Virginia ("UVA") to perform linen distribution services at the UVA Medical Center. On the same date, ABM entered into a Linen Service Agreement with CLS for CLS to provide linen and laundry services to the UVA Medical Center. UVA later terminated the Master Agreement with ABM due to alleged deficiencies, causing ABM to terminate the Linen Service Agreement with CLS. CLS brought this action against ABM for breach of contract. ABM filed a third-party claim against UVA in this action, asserting that UVA terminated the Master Agreement with ABM without cause. The district judge dismissed ABM's third-party claim, finding that the

Master Agreement between UVA and ABM is a different and independent contract from the Linen Service Agreement between ABM and CLS.  Dkt. 30.

The current discovery issue involves a request for production propounded by CLS seeking "any and all documents or communications not already produced (or available on the public docket in this case) that relate to any litigation, arbitration, mediation, or settlement discussions between ABM and UVA." Dkt. 36-1.  ABM objects to this request, asserting that its settlement communications with UVA are not relevant to this case and should be protected from discovery. ABM provided a privilege log to CLS of the documents responsive to the request that it is withholding and provided the withheld documents to the Court for *in camera* review.

Both parties agree that the analysis of these discovery motions falls under the relevancy standard of Federal Rule of Civil Procedure 26(b)(1), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 2(b)(1). Courts generally have broad discretion in managing discovery, including whether to grant or deny motions for protective order and to compel. The party resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See Selective Way Ins. Co. v. Schulle, No. 3:13-cv-40, 2014 WL 462807, at *1 (W.D. Va. Feb. 5, 2014).

The Fourth Circuit does not recognize a "settlement privilege" in discovery or require a particularized showing for discovery of confidential settlement agreements. See Selective Way Ins. Co., 2014 WL 462807 at * 1 (citing cases). Further, courts within the Fourth Circuit decline to apply Rule of Evidence 408 to discovery requests, finding that relevance, not admissibility, is

2

the proper standard. Food Lion LLC v. Dairy Farmers of America Inc., No. 1:20cv442, 2020 WL 6947921, *3 (W.D.N.C. Sept. 29, 2020); Selective Way Ins. Co., 2014 WL 462807 at * 1. The case law is thus clear that the Rule 26(b)(1) relevancy standard applies to discovery disputes involving settlement agreements.

Here, there is no settlement agreement between ABM and UVA. CLS seeks to discover all communications between ABM and UVA that relate to mediation or settlement discussions. Thus, CLS requests access to real-time, ongoing settlement negotiations and discussions between ABM and UVA regarding the Master Agreement, a contract that is separate and distinct from the Linen Services Agreement at issue in this case.

CLS argues that these settlement communications are relevant because CLS's performance under the Linen Services Agreement and its role in UVA's decision to terminate the Master Agreement with ABM is a contested issue in this case. CLS notes that ABM has taken inconsistent positions regarding whether CLS's performance of the Linen Services Agreement was deficient, and CLS suspects that ABM may take a position in a settlement agreement with UVA that is contrary to its defenses in this case. CLS asserts that discovery of ABM's communications with UVA and the facts upon which ABM might rely to support its inconsistent positions are directly relevant to this suit. CLS also asserts that the settlement communications may shed light on certain representatives of ABM or UVA that CLS may want to depose. Further, CLS asserts that any settlement communications suggesting that ABM will drop its claim against UVA if it is found not liable to CLS would be relevant to witness bias in this case.

ABM asks the court to deny CLS's request, arguing that the settlement discussions between ABM and UVA involve a contract that is independent and separate from the Linen Services Agreement, and thus are not relevant to this case and not subject to discovery. ABM

3

notes that UVA is not a party to this case, is not a joint-tortfeasor, and any potential settlement between ABM and UVA will not impact the damages owed by CLS in this matter. ABM also encourages this Court to consider the strong public policy protecting settlement discussions from discovery, and to differentiate between the discovery of settlement negotiations versus the discovery of settlement agreements.

A few courts within the Fourth Circuit have distinguished the discovery of pre-settlement negotiations from the discovery of settlement agreements and found it appropriate to "apply enhanced protections" to settlement communications. Food Lion, 2020 WL 6947921 at *3–4; Wyeth v. Lupin Ltd., No. WDQ-07-632, 2008 WL 11509482, at *3 (D. Md. Mar. 28, 2008). In Food Lion, the court held that "when the disclosure of settlement negotiations is at issue, a particularized showing of relevance by the party seeking such documents is appropriate. Id. at *4. The Food Lion court noted Fourth Circuit case law stating that courts "must balance the public interest in protecting the confidentiality of the settlement process and countervailing interests," and found that "public policy warrants judicial caution in exposing communications made during the negotiations leading up to a final settlement." Id. at * 3 (quoting In re Anonymous, 283 F.3d 627, 637 (4th Cir. 2002)). These courts distinguish between discovery of a settlement agreement once it is reached versus discovery into the settlement negotiations and process.

CLS acknowledges that there is authority within the Fourth Circuit suggesting a heightened relevancy standard for discovery of settlement communications that are not final settlement agreements. CLS asserts that such a heightened standard is unsupported by Rule 26(b)(1), and further, if such a heightened standard applies, it is met in this case.

4

Considering the case law and the arguments of the parties, I decline to compel ABM to produce documents in discovery regarding current, ongoing settlement negotiations between ABM and UVA. There is no settlement agreement that would inform CLS of the resolution of the contract dispute between ABM and UVA, but rather, only early stage settlement discussions. I find it appropriate to proceed with caution when allowing one party to conduct discovery into another party's ongoing settlement negotiations and discussions. CLS has not established that the entire negotiation and settlement process between ABM and UVA is relevant to the breach of contract action between CLS and ABM.  For example, CLS's request would open the door to asking deposition questions about ABM and UVA's specific settlement discussions and negotiations. I find that CLS can obtain any relevant information it would glean from reviewing ongoing settlement communications between ABM and UVA through other, less concerning or burdensome, means.

Accordingly, CLS's Motion to Compel (Dkt. 36) is **DENIED**, and ABM's Motion for Protective Order (Dkt. 35) is **GRANTED**.

It is **SO ORDERED**.

Entered:  January 15, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge