IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-00788 |
| ) | |
| ABM HEALTHCARE SUPPORT ) | By: Elizabeth K. Dillon |
| SERVICES, INC., ) | United States District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On February 17, 2021, the court held a hearing on CHS, Inc.'s motion for summary judgment (Dkt. No. 43) and ABM Healthcare Support Services, Inc.'s motion for summary judgment (Dkt. No. 41). After the court received briefing and oral argument from both parties, the court informed the parties that it would grant in part and deny in part CHS's motion and deny ABM's motion in a written opinion to follow. (Dkt. No. 47.) This opinion sets forth the court's reasoning and decision regarding these motions for summary judgment.

## I. BACKGROUND

**A. Factual Background**

Plaintiff CHS Inc., doing business as Commonwealth Linen Services ("CLS"), is a Virginia corporation that provides laundry and linen services. (Compl. 2–3.) Defendant ABM Healthcare Support Services, Inc. ("ABM") is a Michigan corporation that provides healthcare support services to hospitals and other medical care facilities. (*Id.*) In 2017, ABM entered into an agreement ("the UVA agreement") with the University of Virginia ("UVA") to provide management, materials, and supplies necessary for linen services at UVA's medical facilities. (*Id.* at 3.) On December 21, 2017, ABM entered into a contract ("the linen services contract")

with CLS under which CLS was to provide laundry and linen services to ABM in support of the UVA agreement. (*Id.*) The linen services contract extended until December 31, 2020. (*Id.* at 4.)

On August 28, 2018, UVA notified ABM of grievances related to linen services provided under the UVA agreement. (*Id.*) UVA wrote that "ABM's inability to meet [] contract standards arose early in the relationship and continued unabated for months." (Dkt. No. 44-3 at 2.) UVA complained of the following:

- Insufficient linen, blankets and gowns for patient care
- Insufficient scrubs and jackets to allow clinical staff to tend to patients
- Improper delivery of scrubs to scrub machines, including delivery of inappropriate sizes
- Multiple calls to the linen room being unanswered or requests ignored
- Slow and late deliveries
- Failure to remove dirty linen as needed, sometimes for days
- Quality issues on delivered laundry such as tears, stains (including gum, dirt, tape, residue, blood, stool), and attached EKG pads/leads, linen branded with names of other facilities (including prisons and unrelated hospitals)
- Linen-related delays that have hampered patient care (including delayed patient check-in and postponed surgery)
- Significant issues with ABM's management team's wholesale failure to manage linen services effectively, including a regional manager with insufficient linen management experience and [] two on-site managers conducting themselves with staff in a manner that does not comport with Medical Center HR guidelines. (*Id.* at 3.)

In addition, UVA expressed a desire to terminate its agreement with ABM. (*Id.* at 3–4.)

On September 5, 2018, ABM sent a letter to CLS that: notified CLS of UVA's allegations and ABM's intent to dispute those allegations; sought assistance in replying to UVA's allegations; and served notice of default on CLS in accordance with the linen services agreement. (Dkt. No. 44-4.) ABM attached UVA's August 28th letter to its letter to CLS. (*Id.*) On September 12, 2018, CLS responded to ABM, stating that "it is unclear what specific defaults by CLS that ABM is alleging occurred," and explaining that "CLS is not responsible for the vast majority of the incidents mentioned by UVA." (Dkt. No. 44-7.) According to CLS, ABM never

responded to its letter. (Dkt. No. 44 at 5.) However, on September 13, 2018, ABM responded to UVA, arguing that "ABM and its supplier CLS have consistently provided linens in accordance with the standards [required]." (Dkt. No. 44-8 at 3.)

On December 15, 2018, UVA terminated its agreement with ABM, and the linen services contract automatically terminated at the same time. (Compl. at 5.) CLS then sought liquidated damages from ABM for early termination of the contract. (Dkt. No. 44 at 7.)

**B. Procedural Background**

On November 11, 2019, CLS filed suit against ABM alleging breach of contract. (Compl.) CLS claims that ABM owes CLS $798,684.31 in contractual damages, plus attorneys' fees. (*Id.*) On December 13, 2019, ABM filed an answer arguing that it does not owe CLS liquidated damages. (Answer, Dkt. No. 5.)[1]

On February 3, 2021, ABM filed a motion for summary judgment. (Dkt. No. 41.) ABM asserts that CLS failed to provide clean and quality linens to UVA; therefore, CLS caused UVA to terminate the agreement with ABM and is not entitled to liquidated damages. (Dkt. No. 41 at 2–5.) ABM also asserts that CLS is not entitled to recover any costs associated with expedited removal of linens because that is not provided for by the linen services contract. (*Id.* at 24.) Finally, ABM claims that CLS cannot recover the costs they claim for specialty linens because they fail to identify the cost of these specialty linens. (*Id.*)

On the same day, CLS filed a motion for summary judgment. (Dkt. No. 43.) CLS claims that ABM breached the linen services contract by failing to pay liquidated damages, which CLS

---

[1] On December 13 2019, ABM also filed a third-party complaint against the Rectors and Visitors of UVA arguing that "to the extent ABM owes any funds to CLS, such funds should be paid fully and completely by UVA[], the third party defendant, for wrongfully terminating the contract." (Third-Party Compl. 2, Dkt. No. 6.) UVA then filed a motion to dismiss the third-party complaint. (Dkt. No. 18.) On July 9, 2020, this court dismissed the third-party complaint without prejudice and terminated UVA as a third-party defendant. (Dkt. No. 30.)

is entitled to because it was not at fault for termination of the UVA agreement. CLS also argues that ABM breached the linen services contract by failing to provide CLS with adequate notice of default and an opportunity to cure. (*Id.* at 10–14.) Finally, CLS argues that ABM owes CLS fees for expedited linen removal, specialty linens, and attorney's fees. (*Id.* at 17.)

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials before the court indicates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Pence v. Tenneco Auto. Operating Co.*, No. 5:04CV00075, 2005 WL 999972, at *2 n.2 (W.D. Va. Apr. 26, 2005), aff'd, 169 F. App'x 808 (4th Cir. 2006) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "The burden is on the movant to establish that no material factual disputes exist." *Id.* "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. CLS's Motion for Summary Judgment

CLS argues that the court should grant summary judgment in its favor because ABM breached the linen services agreement by failing to: (1) provide CLS with proper notice of default and an opportunity to cure; (2) pay CLS liquidated damages; (3) pay CLS for specialty linens; and (4) pay CLS for expedited linen removal. In addition, CLS argues that it is entitled to attorney's fees. For the following reasons, the court will grant CLS's motion for summary judgment with respect to the specialty linens and deny CLS's motion for summary judgment with respect to all other issues.

### 1. Notice of Default and Opportunity to Cure

To establish a breach of contract under Virginia law a party must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of the obligation." *Filak v. George*, 267 Va. 612, 494 S.E.2d 610, 614 (Va. 2004) (citing *Brown v. Harms*, 251 Va. 301, 306, (1996); *Fried v. Smith*, 244 Va. 355, 358, (1992); *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546, (1989)).

The linen services contract creates legally enforceable obligations between ABM and CLS. Among these obligations is the requirement that ABM provide CLS with notice of a default and an opportunity to cure the default before termination of the contract for cause. Section 13 of the linen services contract states:

> A. Default. Default shall be deemed to have occurred in the event that either party fails to substantially perform its obligations under this contract and fails to cure within thirty (30) days of receipt of notice of breach. Notice of breach must be in writing, and delivered to the defaulting party's last known business address by certified mail. Such notice shall specifically set forth the basis or reasons for failure of performance relied upon by the party asserting such failure.
>
> B. Termination for cause. This Agreement may be terminated by [ABM] if within thirty (30) days of the receipt of a Notice of Default, [CLS] fails to adequately cure the default. . . . (Dkt. No. 1-1 at 13.)

On the other hand, the linen services contract does not require ABM to provide CLS with notice and an opportunity to cure before an automatic termination of the contract. Section 2 of the linen services contract outlines automatic termination, and it states that "should the [UVA Agreement] be terminated at any time, this Agreement [(the linen services contract)] shall automatically terminate on the same date subject to the liquidated damages in accordance with Article 17 below." (Dkt. 1-1 at 4.)

Here, the parties agree that the linen services agreement was terminated automatically. (Dkt. No. 44 at 14; Dkt. No. 45 at 8.) UVA terminated its agreement with ABM on December 15, 2018, and pursuant to Section 2, the linen services contract between ABM and CLS automatically terminated the same day. The linen services contract does not require ABM to provide CLS with notice of default or an opportunity to cure before this type of automatic termination.

Even if CLS had been entitled to notice of default, and the court finds it is not under these circumstances, genuine disputes of material fact would remain as to whether CLS was in default on the linen services contract. A default occurs under the linen services agreement if "either party fails to *substantially* perform its obligations under the contract." (Dkt. 1-1 at 13 (emphasis added).) CLS's obligations under the linen services contract provide that CLS "shall launder linens in accordance with standards published by Joint Committee on Healthcare Laundry Guidelines and infection control guidelines and shall meet accepted industry standards." (Dkt. No. 1-1 at 3.) The parties dispute whether CLS met this standard. [2] (Dkt. No. 41 at 4; Dkt. No. 44 at 2-6.) Therefore, whether CLS substantially performed its obligations under the contract would remain a question of fact in dispute preventing CLS from obtaining summary judgment on the issue of notice and opportunity to cure.

**2. Liquidated Damages**

Section 17 of the linen services contract provides that:

> [CLS] and [ABM] agree that [CLS] has made a substantial investment to provide service to [ABM] for the term of this Agreement. In the event of termination of

---

[2] The court notes that CLS may be at fault for termination of the UVA agreement without being in default on the linen services contract. This circumstance is possible because the quality standards CLS must meet under the linen services contract differ from the quality standards that permit UVA to terminate the master agreement. Under the UVA agreement, UVA may terminate "[i]f [ABM] fails to provide quality services in a professional manner, solely as determined by the [UVA] Medical Center . . . ." (Dkt. No. 41-3 at 5.) The quality of services as determined by UVA may exceed the quality of services required by CLS under the linen services contract.

6

> the Master Contract by either Customer or [ABM], without cause, or by Customer for cause but not due primarily to [CLS's] own performance, [ABM] shall pay to [CLS] the amount specified in the Liquidated Damages Schedule, below, corresponding to the year during which this Agreement is terminated, as compensation for [CLS's] unrealized return on its investment. (Dkt. No. 1-1 at 8–9.)

The Liquidated Damages Schedule states that $456,000 in damages are owed if the contract is terminated in its second year. The damages amount "shall be prorated based on the month of termination." (*Id.* at 9.)

Here, UVA terminated the agreement for cause, that cause being the complaints UVA set forth in its August 28th letter. (Dkt. No. 44-3 at 2.) Since termination was for cause, CLS is entitled to liquidated damages if termination of the master contract was not primarily due to CLS's own performance. ABM and CLS dispute who is primarily at fault for termination of the UVA agreement. (Dkt. No. 44 at 3, 15; Dkt. No. 45 at 4.) CLS claims that ABM has consistently taken the position that there were no material defects with CLS's performance. (Dkt. No. 44 at 15.) ABM disagrees, stating "CLS' deficient performance substantially contributed to UVA's termination of the Master Agreement." (Dkt. No. 45 at 10–12.) CLS points to ABM's alleged failure to track linen supply as a cause of the inadequate supply of linens, while ABM points to CLS's alleged failure to provide clean and stain-free linens as a cause of the inadequate linen supply. (Dkt. No. 44 at 4–5; Dkt. No. 45 at 5.) Whether CLS or ABM is primarily at fault for termination of the UVA agreement is a material fact that remains in dispute, and, therefore, the court will deny summary judgment as to liquidated damages.

### 3. Specialty Linens

Section 1(a) of the linen services contract provides that:

> [CLS] agrees to furnish the textile products for [ABM] on a linen supply basis providing that [ABM] agrees to standardize to the same linens as used by [CLS] whenever possible. [CLS] will furnish non-standard linen items to [ABM] as

> detailed out in Schedule B. Any non-standard linen items purchased by [CLS] for the sole use of [ABM] will be purchased from [CLS] by [ABM] at the end of this Agreement based on a schedule of 50% of invoice price for usable linen in circulation and 100% of invoice price for all unpackaged linen items in back up inventory. (Dkt. No. 1-1 at 2.)

Pursuant to Section 1(a), ABM owes CLS 50% of the invoice price for usable specialty linen in circulation and 100% of the invoice price for unpackaged specialty linen in inventory. However, ABM disputes CLS's figures regarding the quantity, type, and invoice price of specialty linens in circulation and in inventory. (Dkt. No. 45 at 12.) At the February 17, 2021 hearing, the parties agreed that they may resolve this question of fact amongst themselves by reviewing the quantity, type, and invoice price of the specialty linens at issue. Therefore, the court will grant summary judgment in favor of CLS, finding that ABM owes CLS for the specialty linens as set forth in Section 1(a) of the linen services agreement. However, the specific dollar amount that ABM owes CLS for the specialty linens will be determined by the parties, or by the court if necessary, at a later date, based upon the quantity, type, and invoice price of the specialty linens in circulation and in inventory.

### 4. Expedited Linen Removal

CLS argues that it is entitled to costs for the expedited removal of linens it performed at the end of the linen services contract, pursuant to Sections 1(b) and 1(g) of the linen services contract. (Dkt. No. 44 at 17; Dkt. No. 46 at 21.) Section 1(b) and Section 1(g) deal with the transportation of linens. Section 1(b) states that "[ABM] shall be responsible to have available an appropriate loading and unloading area . . . shall have linen bagged properly for transportation . . . [and] agrees to make reasonable effort to have all soiled linen in carts prior to delivery time." (Dkt. No. 1-1 at 2.) Section 1(g) covers emergency deliveries and provides that CLS may make

special linen deliveries at a round-trip cost of $1 per mile, unless CLS is "in any way [at] fault" for the special delivery. (*Id.* at 4.)

Neither Section 1(b) nor 1(g) deals explicitly with the expedited removal of linens upon termination of the linen services contract. Whether Section 1(g) applies to the expedited removal of linens will depend, at least in part, on whether CLS was at fault for termination of the contract that led to the expedited removal. Because the issue of fault is rooted in genuine disputes of material fact, the court will deny summary judgment on the issue of expedited linen removal.

### 5. Attorney's Fees

CLS argues that it is entitled to attorney's fees under the linen services contract. Section 15 deals with attorney's fees and it states:

> Each party agrees to indemnify and hold the other harmless from any and all claims, suits, damages, fines, penalties, judgments, liabilities and expenses (including reasonable attorney's fees and court costs) arising from (i) any negligent or willful act or omission of the party, its agents, or employees and (ii) breach of this Agreement. (Dkt. No. 1-1 at 8.)

CLS would be entitled to attorney's fees if ABM has breached the linen services contract. However, as noted above, material facts remain in dispute regarding whether either party has breached the linen services contract. For that reason, the court will deny summary judgment on the issue of attorney's fees.

### C. ABM's Motion for Summary Judgment

ABM argues that it is entitled to summary judgment because "CLS breached the terms of the Linen Service Agreement, failed to provide acceptable linens and laundry services according to UVA's expectations, [and] as a result, CLS breached the standards set forth in the Master Agreement." (Dkt. No. 41 at 3.) ABM cites CLS's failure to provide clean, stain-free, and safe

9

linens, accurate linen inventory, and linens with appropriate logos as breaches of the linen services agreement and UVA agreement. (Dkt. No. 41 at 12, 15, and 21.)

As noted earlier in this opinion, the quality standard required under the linen services contract differs from the quality standard required under the UVA agreement. The linen services contract requires CLS to "launder linens in accordance with standards published by Joint Committee on Healthcare Laundry Guidelines and infection control guidelines and [to] meet accepted industry standards." (Dkt. No. 1-1 at 3.) By contrast, the UVA agreement provides that UVA may terminate the master agreement if ABM "fails to provide quality services in a professional manner, solely as determined by the [UVA] Medical Center . . . ." (Dkt. No. 41-3 at 5.) These standards are different; thus, it is possible that CLS may not have breached the linen services agreement while still being at fault for termination of the UVA agreement. Importantly, CLS cannot be in breach of the UVA agreement because it is not a party to that agreement.

Here, genuine disputes of material fact remain regarding whether CLS was in breach of the linen services contract. CLS argues that it did launder linens in accordance with the standards set forth in the linen services contract and certain problems with the cleanliness or quality of linens may be attributed to ABM's defective management of the linen services. (Dkt. No. 46 at 12.) CLS cites employee testimony stating that, "once linens were delivered to UVA it was subject to handling by ABM and UVA that could have contributed to the linens being dirty." (*Id.* at 10–11.) Moreover, CLS explains that sometimes dirty linen carts were sent to the wrong room instead of being sent out for cleaning, which would be the fault of ABM not CLS. (*Id.* at 10.) Genuine disputes of material fact remain regarding whether CLS performed to the standard outlined in the linen services contract. Therefore, the court will deny ABM's motion for summary judgment.

III.  CONCLUSION

For the above reasons and the reasons stated at the hearing, the court will grant in part and deny in part CLS's motion for summary judgment (Dkt. No. 43) and deny ABM's motion for summary judgment (Dkt. No. 41.)  An appropriate order will be entered.

Entered: April 27, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge